MECOM v. VINTON. (No. 139.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 29, 1916.)

1. ANIMALS &#x229E;27—BAILMENT—LIABILITY — RES IPSA LOQUITUR.

While ordinarily, in an action by the bailor against the bailee for injury to a horse bailed, the bailor should set out the specific acts of negligence relied upon, yet, where the bailee has sole custody, the mere fact of injury imputes negligence, and the bailee has the burden of showing that he was not negligent.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 70–78; Dec. Dig. &#x229E;27.]

2. ANIMALS &#x229E;27—BAILMENT—DAMAGES.

The bailor of horses for a four-months' term, on their return in an injured condition, within three months, can recover of the bailee a feed bill for the horses, and after their return to the bailor, and also the amount of veterinary's bill for services, and compensation for time lost in treatment of the horses.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 70–78; Dec. Dig. &#x229E;27.]

3. TRIAL &#x229E;255(10)—INJURY TO THING BAILED—ACTIONS—INSTRUCTIONS.

In the absence of objection to the general charge or request for special charge on the subject, an instruction is not erroneous, to the effect that ordinarily negligence is never presumed, and the burden of proving it is on the plaintiff, but when the property is injured while in the exclusive custody of the bailee, it is his burden to show that he was not negligent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 637; Dec. Dig. &#x229E;255(10).]

4. HUSBAND AND WIFE &#x229E;270(2, 8)—ACTIONS AGAINST HUSBAND—PENDENCY OF DIVORCE PROCEEDINGS—EFFECT.

Where a defendant and his wife were permanently separated and divorce suit was pending, he, nevertheless, was liable to be sued alone so far as community property is concerned, and therefore was not entitled to introduce evidence of the pendency of the divorce proceedings.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 969, 970, 974, 981; Dec. Dig. &#x229E;270(2, 8).]

Appeal from County Court, Liberty County; C. N. Smith, Judge.

Suit by W. A. Vinton against Harvey Mecom. Judgment for plaintiff, and defendant appeals. Affirmed.

Marshall & Harrison, of Liberty, for appellant. C. H. Cain and C. R. Wilson, both of Liberty, for appellee.

BROOKE, J. This suit was instituted by defendant in error, Vinton, on September 17, 1914, in the county court of Liberty county, against the plaintiff in error. It was tried on the 19th day of July, 1915, on plaintiff's first amended original petition, defendant's first amended original answer, and plaintiff's supplemental petition, and resulted in a verdict in favor of the plaintiff in the sum of $75. The cause of action was to recover damages for injury inflicted upon two horses, which were bailed to plaintiff in error, and which were injured while in the exclusive possession of said plaintiff in error. The cause of action is based upon the ground that the horses were in good condition when delivered into the hands of plaintiff in error, and were returned in an injured or damaged state when delivered into the hands of the plaintiff. Vinton alleged that he hired two horses, a gray and sorrel, to plaintiff in error on April 24, 1914, for an agreed rental of $15 per

month, said horses to be used for farm work only, and to be worked for at least four months; that thereafter, about the 28th day of July, said horses were returned to the defendant in error, the gray horse being crippled in the left front foot, and the sorrel being crippled in the left front foot and left hind foot. Said horses were alleged to be worth $250 when plaintiff took charge of same, and when defendant in error received same back the gray was worth $150 and the sorrel horse alleged to be practically worthless. Defendant in error asked judgment for $200, and also judgment for $5 damages to harness, $25 spent by defendant in error in doctoring said horses, $10 for doctor's bill, $11 feed bill, $1.50 for labor, and $7 for medicine bill. Defendant's answers consisted of general demurrer and five special demurrers, general denial, and various special pleas. The demurrers were overruled, and judgment was had in favor of plaintiff in the lower court in the sum of $75. The plaintiff in error's motion for new trial being overruled, the cause is now before this court on writ of error.

[1] Plaintiff in error complains that the petition of plaintiff in the lower court did not set out how and in what manner the defendant was guilty of negligence, and the proposition is that plaintiff's petition in the lower court was insufficient against the special exception, asking that the plaintiff set forth and describe the negligence or unusual treatment said horses received by reason of which said horses were injured, and because this was a bailment for hire, and contemplated as matter of law that defendant would work such horses, and use them such as an ordinarily prudent person would do under the same or similar circumstances for the purposes for which they were hired, that negligence must be pleaded and proven, and that the pleader must state the facts upon which he relies to support his cause. Ordinarily this is true. However, in the case of Hislop v. Ordner, 28 Tex. Civ. App. 540, 67 S. W. 337, the court, Judge Neill handing down the opinion, uses the following language:

"The evidence, briefly stated, is as follows: In October, 1898, the appellee delivered at Ganado his horse and buggy to appellant, to be driven by him, without compensation, and solely for the former's benefit, to Yoakum, Tex., and there to be delivered to him. On or about the 10th day of the month the appellant started with the horse and buggy from Ganado, the animal then being apparently sound and well, for the purpose of performing his agreement with appellee to drive to Yoakum, and there deliver the animal and vehicle to him. Night overtook appellant on his journey, and he turned into a pasture, unharnessed the horse, turned him loose with a stake rope about his neck, and he commenced to graze; and appellant lay down in the buggy and fell asleep. During the night he was awakened by the groaning and struggling of the animal, and went to him, kicked him, and made him get up. The horse appeared sick, as if he had colic, bit himself in the flanks, and shortly afterwards lay down and died. The horse had been driven at an ordinary gait from

7 o'clock in the morning, except an hour and a half taken for noon, until sundown. But it cannot be determined from the record before us the distance traveled. The statement of the evidence in regard to the journey, and what occurred during it, is made from the testimony and admission of the appellant himself; such being the only evidence on the subject. Ordinarily negligence is never to be presumed, but must be proven like any other substantive fact, and the burden of proof is upon the plaintiff. But when the property is lost or injured while in the exclusive custody of the bailee, his servant or agent, it is incumbent upon the bailee to prove that the loss or injury was not occasioned by the negligence of himself, or his servants or agents. 3 Am. & Eng. Enc. of Law (2d Ed.) page 750, and cases cited; Pusey v. Webb [2 Pen. (Del.) 490], 47 Atl. 701. The reason of the rule is apparent. The bailee has the sole possession and custody of the chattel bailed. He cannot return the article to the bailor in a damaged condition, or not return it at all, and by his silence defeat a recovery for the damage because of the bailor's inability to prove how the damage or loss happened. Although the burden of proof may rest eventually upon the plaintiff to establish his cause of action, until some reason is given for the injury to or loss of the property, the bailee should properly be held answerable therefor. Rutherford v. Krause [55 App. Div. 210], 66 N. Y. Supp. 781."

Also, in the case of Freeman v. Foreman, 141 Mo. App. 359, 125 S. W. 526, the court used the following language:

"Attention was first called to this by Judge Thompson in the case of Arnot v. Branconier, 14 Mo. App. 431, in which he calls attention to the decision of the Supreme Court in McCarty v. Wolfe, 40 Mo. 520, in which it is held in a case of bailment that the plaintiff, having alleged negligence in his statement, assumed the burden of proving it, and that this burden is not discharged by proof of the bailment and failure to return the property. In the later case of Wiser v. Chesley, 53 Mo. 547, the Supreme Court held that a prima facie case was made by proof of the bailment and loss of the property. In the latter case it does not appear in the statement of the case what the pleadings alleged, but from the appellant's brief in that case, it appears that the case was tried on the negligence theory. Judge Thompson concluded that the case of Wiser v. Chesley was in conflict with the case of McCarty v. Wolfe, and as it was the later case, and, as he thought, gave a correct exposition of the law upon that question, he followed that case, and held that, when negligence was charged in general terms, a prima facie case was made by proof of the bailment and loss or injury of the property. This has been the uniform holding by the Courts of Appeals in this class of cases since. Clark v. Shrimski, 77 Mo. App. 166; Berger v. Storage & Commission Company, 136 Mo. App. loc. cit. 40, 116 S. W. 444. We think the apparent conflict in the cases arises from a failure to distinguish between causes of action based squarely upon a contract of bailment and those founded upon negligence. It is familiar law that in bailment cases it is not necessary to plead negligence. All that is necessary is for plaintiff to allege the contract of bailment and his compliance therewith, and a failure of defendant * * * to return the property, or its return in an injured condition. In cases grounded upon negligence, it is also familiar law that the burden of proving negligence is upon him who alleges it, and when a bailor grounds his action in negligence, he waives his rights under the usual mode of procedure in bailment cases, and subjects himself to the rules applicable in negligence cases. There is one rule, however, which, in a proper case for its application, practically places the plaintiff, who

alleges negligence in general terms in a bailment case, upon the same footing, as far as proof is concerned, as he who brings an ordinary action upon a bailment contract without any allegation of negligence; and that is that in all negligence cases, where the charge of negligence is a general one, and the plaintiff can show that the loss or injury occurred under such circumstances that it may be reasonably inferred, from the fact that injury did occur, that if ordinary care had been used by the party charged, the injury would not have resulted, he thereby makes a prima facie case, and casts upon the defendant the burden of showing that he exercised that degree of care which under the law it was his duty to exercise in the particular case. This doctrine known in legal parlance as 'res ipsa loquitur,' is now a familiar rule of practice in the trial of negligence cases. The trial court in holding that plaintiff made a prima facie case by proof of the bailment and injury to the animal while she was in the care of defendants must have done so upon the theory that this was an appropriate case for the application of the rule above cited. In this we think he was right.

"It is not usual for a horse to be injured while standing in a barn, and, when one is injured while in that situation, it is but fair to assume that the injury resulted from some want of care upon the part of those in charge of the barn. The horse is committed to the care of defendants, and while in their care is injured. The defendants are in a position to know what was done in the way of caring for the horse, and the plaintiff is not. To require the plaintiff under such circumstances to prove the specific acts of negligence which caused the injury, or to prove in what particular the defendant failed to exercise ordinary care, when he was not present and had no opportunity to observe the conduct of the defendants, or their servants, would be to place upon him an impossible burden, and require him to assume the responsibility of proving facts that were exclusively within the knowledge of the defendants, and of which he had, and in the nature of things could have, no information, and would be equivalent to denying him any relief at all. The allegation of negligence in this case is made in general terms. No specific act of commission or omission is alleged. Price v. Metropolitan Street Railway Co., 220 Mo. 435, 119 S. W. 932 [132 Am. St. Rep. 588].

"Defendants contend, however, that this is not a proper case for the application of the rule of res ipsa loquitur, because they contended at the trial that plaintiff's treatment of the horse after it had received an injury in the barn augmented it and made permanent what at first was only a slight injury. We are unable to see how any position taken by defendants at the trial or any evidence offered by them could deprive plaintiff of any of his rights, or take from him the benefit of any presumption in his favor. True, the presumption of negligence which arises from the fact of injury while the property was in the exclusive control of defendants would not continue and apply to any injury that might be occasioned by the unskillful treatment of the horse by plaintiff after the initial injury was inflicted. The question as to what effect plaintiff's treatment of the animal after the injury may have had upon it was one of fact, and, as no declarations of law were asked as to that question, we must assume that the court decided it correctly. If plaintiff's treatment of the animal did increase the effect of the injury, this would only reduce the damages, and would not be a complete defense.

"The fact that plaintiff offered some testimony tending to show specific acts of negligence on the part of defendants should not deprive him of the benefit of a presumption that already obtained in his favor. Such testimony should be regarded as cumulative only, and should have

no effect upon the presumption of negligence arising from the fact of the injury itself, unless such testimony should, in some way, contradict the presumption. Especially is this true where, as in this case, such evidence does not clearly show how the injury was inflicted. Price v. Metropolitan Street Railway Co., supra.

"This being, in our judgment, an appropriate case for the application of the doctrine of res ipsa loquitur, our conclusion is that this case was tried upon the correct theory, and the trier of the fact, which, in this case, was the court, had the right, upon proof of the bailment and injury while the property was in the exclusive charge of the defendants, to infer negligence therefrom. The court found the issues in plaintiff's favor, and, as there is substantial evidence to support them, we shall not disturb his findings."

This, in our judgment, effectually disposes of the contention of the plaintiff in error, and the assignment is overruled.

[2] Plaintiff in error further assigns error, as follows: (a) The trial court erred in overruling plaintiff in error's exception No. 2 to the first amended original petition, because the $11.70 set up in the petition for feed for the horses, after defendant in error had taken said horses from plaintiff in error, constituted double damage, and is too remote.

(b) The trial court erred in overruling plaintiff in error's special exception No. 5, to plaintiff's first amended original petition, because the doctor bill that plaintiff's petition undertakes to charge defendant with is too remote and constitutes double damages.

(c) The trial court erred in overruling defendant's special exception to the court's general charge, wherein the jury was instructed that if they should find for the plaintiff such amount as the evidence showed would reasonably compensate plaintiff for time lost in treatment of the horses, because the same was too remote and constituted double damages.

(d) The trial court erred in authorizing the jury, in his general charge, to find for plaintiff the amount of the feed bill after the horses were delivered to the defendant in error, because the amount of said feed bill is too remote, and constitutes double damages.

Upon these and like contentions, it has been held that reasonable expense incurred in taking care of and curing an animal injured by a railway company can be recovered. I. & G. N. Ry. Co. v. Cocke, 64 Tex. 151. In that case, among other things, the Supreme Court says:

"If, in consequence of the wrong of the appellant, the cow of the appellee was so injured as to render it necessary to incur expense in taking care of and curing her, then the appellant was liable for such reasonable expenses as were necessarily incurred in this respect, and the court correctly so charged" (citing Watson v. Proprietors Lisbon Bridge, 14 Me. 205 [31 Am. Dec. 49]; Gillett v. Western Ry. Corp., 8 Allen [Mass.] 563; 2 Sedgwick on Measure of Damages, 315, note A.

It has also been held that where an animal is so injured by the actionable negligence of the railway company that its usefulness is not only impaired, but destroyed, the

measure of damage is its value, reasonable compensation for attention and expense in a prudent effort to effect a cure. Railway Co. v. Keith, 74 Tex. 287, 11 S. W. 1117. The Supreme Court, in passing upon this case, used the following language:

"The general rule undoubtedly is that, where there is a total loss of personal property resulting from the negligence of defendant, the measure of damages is the value of the property at the time of the injury, and interest. This rule is not inflexible. Where an animal is so injured that its usefulness is not only impaired, but destroyed, the measure of damages is its value, reasonable compensation for attention, and expenses in prudent effort to effect a cure. It is said in Shearman & Redfield on Negligence: 'The law would be inhuman if it should prescribe a different rule, even where the animal eventually dies, since it would then offer an inducement to the owner to neglect its sufferings.' Shear. & R. Neg. § 603, and note 2. If the plaintiff in good faith attempted to cure his horses after they were injured, and for that purpose fed and attended to them, and they became from their injuries useless, he should have, as damages, reasonable compensation for his attention to them, and expenses incurred, besides their value; provided, of course, he is entitled to recover at all."

We do not see why, in a case of bailment, the same rule would not apply as in the case of negligent injury of animals by a railway company. Therefore we find no merit in these assignments, and they are overruled.

[3] The sixth assignment of plaintiff in error is as follows:

"The trial court erred in giving special charge No. 1, requested by defendant in error, which special charge No. 1 reads as follows: 'You are hereby charged that ordinarily negligence is never to be presumed, but must be proven like any other substantive fact, and the burden of proof is upon the plaintiff. But when the property is injured while in the exclusive custody of the bailee, his servant or agent, it is incumbent upon the bailee to prove that the injury was not occasioned by the negligence of himself, or his servants or agents.'"

There was no objection to the general charge in this respect, nor was there any request for special charge covering this point. It seems that the case was tried on the theory that the horses were in a good sound condition when they were delivered, and there was no issue seriously raised as to whether or not the horses were crippled at the time it was claimed. Plaintiff in error should have requested a special charge specifically submitting the issue. The same might be said with reference to the seventh assignment of error. They are each overruled.

[4] By the eighth assignment of error, it is charged that the court erred in refusing to permit the plaintiff, Vinton, to testify that he and his wife were permanently separated, and that a suit for divorce was pending, because said testimony would have shown that since the filing of the suit the marriage relation between plaintiff and his wife, so far as community property is concerned, has been dissolved, etc.

It seems that at the time of the trial of this case suit for divorce was only pending. The plaintiff in error, Vinton, was still a married man, and head of the family, and was entitled to sue and be sued alone, in so far as the community property is concerned, and as such, it was not necessary to join his wife as a party plaintiff and part owner of the property.

We have made a careful examination of the record, and, finding no error, we believe that the same should be in all things affirmed; and it is so ordered.

Affirmed.